MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ISRAEL EFRAIN RENDON, PANTALEON
LEON, and SANTOS MARLENE LOPEZ
SIGUENZA, *individually and on behalf of
others similarly situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| *Plaintiffs*, | |
| | **COLLECTIVE ACTION UNDER** |
| -against- | **29 U.S.C. § 216(b)** |
| CONTINENTAL HOSTS, LTD.  (d/b/a GLEN | **ECF Case** |
| ISLAND HARBOUR CLUB ), BRUCE R. | |
| LEWIN , JAMIE MEADOW , and ALBERT | |
| DUGA , | |
| | |
| *Defendants.* | |

-------------------------------------------------------X

Plaintiffs Israel Efrain Rendon, Pantaleon Leon, and Santos Marlene Lopez Siguenza ,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Continental Hosts, Ltd. (d/b/a Glen Island Harbour Club), ("Defendant Corporation"),

Bruce R. Lewin,  Jamie Meadow, and  Albert Duga, ("Individual Defendants"), (collectively,

"Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Continental Hosts, Ltd. (d/b/a Glen

Island Harbour), Bruce R. Lewin, Jamie Meadow, and Albert Duga but are still working in the same

business under other ownership.

2.      Defendants owned, operated, or controlled the club, located at 50 Glen Island Park, New Rochelle, NY 10805 under the name "Glen Island Harbour Club".

3.      Upon information and belief, individual Defendants Bruce R. Lewin, Jamie Meadow, and Albert Duga, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as cooks and sous chefs at the restaurant located at 50 Glen Island Park, New Rochelle, NY 10805.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.*

and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a club  located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

14.     Plaintiff Israel Efrain Rendon ("Plaintiff Rendon" or "Mr. Rendon") is an adult individual residing in Westchester County, New York.

15.     Plaintiff Rendon was employed by Defendants at "Glen Island Harbour Club" from approximately 2000 until on or about November 2018.

16.     Plaintiff Pantaleon Leon ("Plaintiff Leon" or "Mr. Leon") is an adult individual residing in Kings County, New York.

17.     Plaintiff Leon was employed by Defendants at Glen Island Harbour Club from approximately June 4, 1976 until on or about November 2018.

18.     Plaintiff Santos Marlene Lopez Siguenza ("Plaintiff Lopez" or "Ms. Lopez") is an adult individual residing in Westchester County, New York.

19.     Plaintiff Lopez was employed by Defendants at Glen Island Harbour Club from approximately March 18, 2008 until on or about November 2018.

*Defendants*

20.     At all relevant times, Defendants owned, operated, or controlled a club, located at 50 Glen Island Park, New Rochelle, NY 10805 under the name "Glen Island Harbour Club".

21.     Upon information and belief, Continental Hosts, Ltd. (d/b/a Glen Island Harbour Club) was a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 50 Glen Island Park, New Rochelle, NY 10805.

22.     Defendant Bruce R. Lewin is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Bruce R. Lewin is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Bruce R. Lewin possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

23.     Defendant Jamie Meadow is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jamie Meadow is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Jamie Meadow possessed operational control over Defendant Corporation, an ownership interest in

Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

24.     Defendant Albert Duga is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Albert Duga is sued individually in his capacity as a manager of Defendant Corporation. Defendant Albert Duga possessed operational control over Defendant Corporation and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

25.     Defendants operated a club located in the New Rochelle section of Westchester in New York.

26.     Individual Defendants, Bruce R. Lewin, Jamie Meadow, and Albert Duga, possessed operational control over Defendant Corporation, possessed ownership interests in Defendant Corporation, or controlled significant functions of Defendant Corporation.

27.     Defendants were associated and joint employers, act in the interest of each other with respect to employees, paid employees by the same method, and shared control over the employees.

28.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

29.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and were Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

30.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

31.     Upon information and belief, Individual Defendants Bruce R. Lewin, Jamie Meadow and Albert Duga operated Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

32.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled

the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

33.      In each year from 2013 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

34.      In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

35.      Plaintiffs are former employees of Defendants who were employed as cooks and sous chefs.

36.      Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Israel Efrain Rendon*

37.      Plaintiff Rendon was employed by Defendants from approximately 2000 until on or about November 2018.

38.      Defendants employed Plaintiff Rendon as a sous chef.

39.      Plaintiff Rendon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

40.      Plaintiff Rendon's work duties required neither discretion nor independent judgment.

41.      Throughout his employment with Defendants, Plaintiff Rendon regularly worked in excess of 40 hours per week.

42.      From approximately February 2013 until on or about March  2013, Plaintiff Rendon worked from approximately 10:00 a.m. until on or about 4:00 p.m., 2 days a week and from

approximately 1:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 3 days a week (typically 45 hours per week).

43.    From approximately April on or about June of the years 2013, 2014, 2015, 2016, 2017 and 2018, Plaintiff Rendon worked from approximately 12:00 p.m. until on or about 11:00 p.m., 3 days a week, from approximately 9:00 a.m. until on or about 11:00 p.m., 2 days a week, and from approximately 1:00 p.m. to 2:00 p.m. until on or about 11:00 p.m., 2 days a week (typically 79 to 81 hours per week).

44.    From approximately June until on or about December of the years 2013, 2014, 2015, 2016, and 2017, Plaintiff Rendon worked from approximately 10:00 a.m. until on or about 4:00 p.m., 1 day a week, from approximately 1:00 p.m. until on or about 11:00 p.m., 1 day a week, and from approximately 1:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 4 days a week (typically 56 to 60 hours per week).

45.    From approximately January until on or about March of the years 2014, 2015, 2016, 2017 and 2018, Plaintiff Rendon worked from approximately 10:00 a.m. until on or about 4:00 p.m., 2 days a week and from approximately 1:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 3 days a week (typically 45 hours per week).

46.    From approximately June 2018 until on or about November 2018, Plaintiff Rendon worked from approximately 10:00 a.m. until on or about 4:00 p.m., 1 day a week, from approximately 1:00 p.m. until on or about 11:00 p.m., 1 day a week, and from approximately 1:00 p.m. to 2:00 p.m. until on or about 12:00 a.m., 4 days a week (typically 56 to 60 hours per week).

47.    Throughout his employment, Defendants paid Plaintiff Rendon his wages by check.

48.    From approximately March 2013 until on or about August 2017, Defendants paid Plaintiff Rendon a fixed salary of $750 per week.

49.    From approximately August 2017 until on or about November 2018, Defendants paid Plaintiff Rendon a fixed salary of $1,000 per week.

50.     Plaintiff Rendon's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

51.     For example, Defendants required Plaintiff Rendon to work an additional 30 minutes to an hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

52.     Defendants never granted Plaintiff Rendon any breaks or meal periods of any kind.

53.     Plaintiff Rendon was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

54.     Prior to 2018, no notification, either in the form of posted notices or other means, was ever given to Plaintiff Rendon regarding overtime and wages under the FLSA and NYLL.

55.     Defendants never provided Plaintiff Rendon an accurate statement of wages, as required by NYLL 195(3).

56.     Defendants never gave any notice to Plaintiff Rendon, in English and in Spanish (Plaintiff Rendon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

57.     Defendants required Plaintiff Rendon to purchase "tools of the trade" with his own funds—including 5 knives.

*Plaintiff Pantaleon Leon*

58.     Plaintiff Leon was employed by Defendants from approximately June 4, 1976 until on or about November 2018.

59.     Defendants employed Plaintiff Leon as a cook.

60.     Plaintiff Leon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

61.     Plaintiff Leon's work duties required neither discretion nor independent judgment.

62.     Throughout his employment with Defendants, Plaintiff Leon regularly worked in excess of 40 hours per week.

63.     From approximately March until on or about April, and then from July until on or about September, and then from November until on or about December of each year, Plaintiff Leon worked from approximately 10:00 a.m. until on or about 3:00 p.m., 2 days a week and from approximately 1:00 p.m. until on or about 12:00 p.m. or from approximately 9:00 a.m. to 11:00 p.m. to 12:00 a.m., three days a week (typically 45 to 55 hours per week).

64.     From approximately for the months of May, June and October of each year, Plaintiff Leon worked from approximately 10:00 p.m. until on or about 3:00 p.m., two days a week and from approximately 1:00 p.m. until on or about 12:00 p.m. or from approximately 9:00 a.m. until on or about 11:00 p.m. to 12:00 a.m., four days a week (typically 56 to 75 hours per week).

65.     Throughout his employment, Defendants paid Plaintiff Leon his wages by check.

66.     From approximately March 2013 until on or about December 2017, Defendants paid Plaintiff Leon a fixed salary of $515 per week.

67.     From approximately January 2018 until on or about November 2018, Defendants paid Plaintiff Leon a fixed salary of $609 per week.

68.     Plaintiff Leon's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

69.     For example, Defendants required Plaintiff Leon to work an additional 1 hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

70.     Defendants never granted Plaintiff Leon any breaks or meal periods of any kind.

71.     Plaintiff Leon was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

72.     Prior to 2016, no notification, either in the form of posted notices or other means, was ever given to Plaintiff Leon regarding overtime and wages under the FLSA and NYLL.

73.     Defendants never provided Plaintiff Leon an accurate statement of wages, as required by NYLL 195(3).

74.     Defendants never gave any notice to Plaintiff Leon, in English and in Spanish (Plaintiff Leon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Santos Marlene Lopez Siguenza*

75.     Plaintiff Lopez was employed by Defendants from approximately March 18, 2008 until on or about November 2018.

76.     Defendants employed Plaintiff Lopez as a cook.

77.     Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

78.     Plaintiff Lopez's work duties required neither discretion nor independent judgment.

79.     Throughout her employment with Defendants, Plaintiff Lopez regularly worked in excess of 40 hours per week.

80.     From approximately March until on or about April and then from approximately August until on or about October of the years 2013, 2014, 2015, 2016, 2017 and 2018, Plaintiff Lopez worked from approximately 10:00 a.m. until on or about 4:00 p.m., 2 days a week and from approximately 1:00 p.m. until on or about 11:00 p.m. to 1:00 a.m., 3 days a week (typically 42 to 48 hours per week).

81.     However, from approximately May until on or about July of each year, Plaintiff Lopez worked from approximately 9:00 a.m. until on or about 11:00 p.m. to 1:00 a.m., 7 days a week (typically 98 to 112 hours per week).

82.     Furthermore, from approximately November until on or about February of each year, Plaintiff Lopez worked from approximately 10:00 a.m. until on or about 4:00 p.m., 1 day a week and from approximately 1:00 p.m. until on or about 11:00 p.m., 2 days a week (typically 26 hours per week).

83.     Throughout her employment, Defendants paid Plaintiff Lopez her wages by check.

84.     From approximately March 2013 until on or about December 2015, Defendants paid Plaintiff Lopez $11.00 per hour.

85.     From approximately January 2016 until on or about November 2018, Defendants paid Plaintiff Lopez $13.00 per hour.

86.     Plaintiff Lopez's pay never varied even when she was required to stay later or work a longer day than her usual schedule.

87.     For example, Defendants required Plaintiff Lopez to work an additional 1 to 2 hours past her scheduled departure time 3 times per week, and did not pay her for the additional time she worked.

88.     Defendants never granted Plaintiff Lopez any breaks or meal periods of any kind.

89.     Prior to 2016, no notification, either in the form of posted notices or other means, was ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

90.     Defendants never provided Plaintiff Lopez an accurate statement of wages, as required by NYLL 195(3).

91.     Defendants never gave any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

92.     Defendants required Plaintiff Lopez to purchase "tools of the trade" with her own funds—including four knives.

*Defendants' General Employment Practices*

93.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

94.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they owed for the hours they worked.

95.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

96.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

97.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

98.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

99.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

100.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

101.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

102.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

103.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

104.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

105.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and were subject

to Defendants' common practices, policies, programs, procedures, protocols and plans including

willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and

one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA,

and willfully failing to keep records under the FLSA.

106. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

107. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

108. At all times relevant to this action, Defendants were Plaintiffs' employers within the

meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and

fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their

employment, and determined the rate and method of any compensation in exchange for their

employment.

109. At all times relevant to this action, Defendants were engaged in commerce or in an

industry or activity affecting commerce.

110. Defendants constitute an enterprise within the meaning of the Fair Labor Standards

Act, 29 U.S.C. § 203 (r-s).

111. Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable

minimum hourly rate, in violation of 29 U.S.C. § 206(a).

112. Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable

minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

113. Plaintiffs (and the FLSA Class members) were damaged in an amount to be

determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

114.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

115.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

116.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

117.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

118.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

119.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

120.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

121.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

122.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

123.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

124.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

125.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

126.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

127.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

128.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

129.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

130.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

131.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

132.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of

the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

133.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

134.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

136.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

137.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs,

further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

139.    Plaintiffs were damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount

equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order are willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       March 20, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     /s/ Michael Faillace
        Michael Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620
        *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 13, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Israel Efrain Rendon

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     13 de Febrero de 2019

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

February 13, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Pantaleon Leon
Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          13 de febrero de 2019

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 13, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Santos Marlene Lopez Siguenza

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                _Marlene Lopez_

Date / Fecha:                     13 de febrero 2019

*Certified as a minority-owned business in the State of New York*